IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALICIA MARIE BLEA,

      Plaintiff,

v.                                                    Civ. No. 20-1310 KG/GBW

KILOLO KIJAKAZI, *Acting
Commissioner of the Social Security
Administration*,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before me pursuant to the Court's Order of Reference Relating to Social Security Appeals (*doc. 12*) and Plaintiff's Motion of Reverse and Remand (*doc. 33*).  For the reasons discussed below, I recommend DENYING Plaintiff's Motion and AFFIRMING the judgment of the SSA.

### I.    PROCEDURAL HISTORY

Plaintiff filed an initial protective application for SSDI on December 19, 2017, alleging disability beginning December 15, 2007.  Administrative Record ("AR") at 45-46.  Plaintiff's application was denied on initial review on June 7, 2018, AR at 56-57, and again on reconsideration on December 14, 2018, AR at 67.  On January 31, 2020, a hearing was held by an Administrative Law Judge ("ALJ").  AR at 4-33.  The ALJ issued an unfavorable decision on March 2, 2020.  *See* AR at 86.  Plaintiff sought review from

the Appeals Council, which denied review on October 13, 2020, AR at 1, making the

ALJ's denial the Commissioner's final decision, *see* 20 C.F.R. §§ 404.981.

On December 17, 2020, Plaintiff filed suit in this Court, seeking review and

reversal of the ALJ's decision.  *See doc. 1.*  On February 15, 2023, Plaintiff filed a Motion

to Appoint Counsel, *doc. 31*, which the Court denied on February 21, 2023, *doc. 32*.

Plaintiff filed her *pro se* Motion of Reverse and Remand on March 22, 2023.  *Doc. 33.*  The

Commissioner responded on June 21, 2023.  *See doc. 39.*  Briefing on Plaintiff's Motion

was complete on July 5, 2023, after Plaintiff declined to file a reply by the deadline.

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the

Commissioner only to determine whether it (1) is supported by "substantial evidence"

and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Hum. Servs.*,

933 F.2d 799, 800–01 (10th Cir. 1991).  "In reviewing the ALJ's decision, [the Court]

neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks

omitted).

"Substantial evidence is more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Casias*, 933 F.3d at 800 (internal quotation marks omitted).  "The record must

demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Indeed, the substantial evidence standard is met unless the evidence on which the ALJ relied is "overwhelmed by other evidence in the record or constitutes mere conclusion." *See Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)).

### III.    ALJ EVALUATION

#### A. Legal Standard

For purposes of Social Security Disability Insurance benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. §

404.1520.  If the Commissioner finds an individual disabled at any step, the next step is not taken.  *Id.* § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work."  *Id.* § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.

Step four of this analysis consists of three phases.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations."  *Id.* § 404.1545(a)(1).  Second, the ALJ determines the physical and mental demands of the claimant's past work.  "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'"  *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)).  Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands.  *Id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process.  At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

**B.  The ALJ's Decision**

On March 2, 2020, the ALJ issued a decision denying Plaintiff's application for SSDI benefits.  *See* AR at 86.  The ALJ first determined that Plaintiff has acquired enough quarters of coverage to remain insured through September 30, 2012.  AR at 71. As a result, the Plaintiff must establish disability between December 15, 2007, the alleged onset date of disability and September 30, 2012, the date last insured.  AR at 71; *see* 20 C.F.R. § 404.131(a).

In denying Plaintiff's application, the ALJ applied the five-step sequential analysis.  At step one, the ALJ found that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of December 15, 2007 through her date last insured of September 30, 2012."  AR at 73.  At step two, he found that Plaintiff has the following severe impairments: "cognitive disorder not otherwise specified, mood disorder not otherwise specified, obesity, and minimal lumbar degenerative changes."  AR at 73.  He also noted that Plaintiff has other medically determinable

impairments, including hypothyroidism and a hypersensitivity to airborne scents, but the ALJ found these impairments to be non-severe.  AR at 73-74.  At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or equal the severity of an impairment in the Listings.  AR at 74-76.

At step four, the ALJ found that at the time that Plaintiff was last insured, she had the RFC to perform light work, subject to several physical and mental limitations. AR at 77.  With respect to physical limitations, the ALJ found that Plaintiff was able to: "lift 20 pounds occasionally and lift and carry 10 pounds frequently and push and pull the same"; "walk and stand for six hours per eight-hour workday and sit for six hours per eight-hour workday with normally scheduled breaks"; "frequently climb ramps and stairs, but never . . . climb ladders, ropes and scaffolds"; and "frequently stoop, crouch, kneel and crawl." AR at 77.  With respect to mental limitations, the ALJ found that Plaintiff was "able to understand, remember and carry out simple instructions and make commensurate work related decision in a work setting with few, if any, changes." She was also able "to interact occasionally with supervisors, co-workers and the public" and "to maintain concentration, persistence and pace for two hours at [a] time during the workday with normally scheduled breaks."  AR at 77.

In making these findings, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged

symptoms, but that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and the other evidence in the record.  AR at 78.  The ALJ discussed Plaintiff's reported symptoms from both her hearing testimony and the medical record.  AR at 77-78.  The ALJ also provided a chronological review of Plaintiff's medical history during the time of her alleged period of disability, including the medical records from Drs. Hennelly, DeRosa, Barrett, Patton, Pacheco, Koltuska-Haskin, Larivee, and Sahs.  AR at 78-82.

## IV.   ANALYSIS

Plaintiff broadly asserts that the ALJ's decision should be remanded because (1) "the ALJ erred in evaluating the severity of her impairments" and (2) "[t]he ALJ's finding that Plaintiff had the residual functional capacity for light work is not supported by substantial evidence."  *Doc. 33* at 1.  Plaintiff also provides a list of 27 errors that she believes the ALJ committed during the course of his decision.  *See generally id.*  Defendant disputes each of these arguments.  *See generally doc. 39*.  For the reasons explained below, I recommend finding for Defendant.

Because Plaintiff is appearing pro se, the Court will "liberally construe her filings."  *Streeter v. Berryhill*, 724 F. App'x 632, 634 (10th Cir. 2018) (unpublished) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) and *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  As a result, the Court may "make some allowances for a pro se litigant's

failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements." *Velasquez v. Astrue*, 301 F. App'x 778, 780 (10th Cir. 2008) (unpublished) (citation omitted).  The Court does not, however, "serve as an advocate or attorney for a pro se litigant by 'constructing arguments and searching the record' on her behalf." *Streeter*, 724 F. App'x at 634 (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

    **A.**    **The Court May Only Review the ALJ's Decision Based on the Information in the Record at the Time of the Decision**

       Two of Plaintiff's listed Errors argue that the ALJ should have considered pieces of information that were not included in the record regarding help she received after having her baby ("Error 20") and her behavior while driving ("Error 23").  *Doc. 33* at 4-5.  However, a court cannot find that an ALJ erred because he failed to consider information that he did not have at the time he made his decision.  *See Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007) ("We review the Commissioner's decision to determine whether [her] factual findings are supported by substantial evidence *in the record* viewed as a whole and whether [she] applied the correct legal standards.") (emphasis added) (citation omitted).  As a result, Plaintiff's Errors 20 and 23 are not adequate bases for remanding the ALJ's decision.

**B.      The ALJ Did Not Commit Error in His Assessment of the Severity of Plaintiff's Impairments**

Some of Plaintiff's arguments can be liberally construed to relate to the ALJ's

assessment of the severity of Plaintiff's mental impairments at steps two and three.  At

steps two and three, the ALJ considers if any of the claimant's medically determinable

physical or mental impairments are "severe" such that they "significantly limit [the

claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §

404.1520(c).  If the ALJ determines that the claimant has one or more severe

impairments, he decides whether any of these severe impairments meet the criteria of a

Listing.  *Id.* § 404.1520(a)(4)(ii).  If a claimant has a severe impairment that meets the

criteria of a Listing, the claimant is disabled.  *Id.*  If the claimant has one or more severe

impairments, but none of these impairments meet the criteria of a Listing, the ALJ will

proceed to on to step four in which he determines the RFC.  *Id.* § 404.1520(a)(4)(iv).

In this case, the ALJ found at step two that Plaintiff had four severe impairments:

cognitive disorder not otherwise specified, mood disorder not otherwise specified,

obesity, and minimal lumbar degenerative changes.  AR at 73.  The ALJ then found that

none of these severe impairments met or medically equaled the severity of one of the

listed impairments.  AR at 74-76.  At step three, the ALJ determined that Plaintiff had a

moderate limitation in understanding, remembering, or applying information, a

moderate limitation in interacting with others, a moderate limitation in concentrating,

persisting, or maintaining pace, and a moderate limitation in adapting or managing

oneself.  AR 75-76.  The ALJ based these findings on an analysis of Plaintiff's education

history, medical record, including several cognitive tests, and hearing testimony,

including Plaintiff's reports of symptoms.  AR at 75-76.  Because Plaintiff did not have

at least two marked limitations or one extreme limitation, the ALJ did not find Plaintiff

disabled at step three.  AR at 76; *see also* 20 C.F.R. § 404.1520a(b)(4).

Plaintiff makes several general arguments that the ALJ did not properly consider

evidence that she has severe cognitive and mood impairments.  *See doc. 33* at 5 (Error 21:

"Plaintiff [had] increased periodic cognitive problems" after her pregnancy in 2007;

Errors 24-27: Plaintiff has difficulties with memory, time management, language, and

planning, as noted in the medical records from Dr. Koltuska-Haskin); *id.* at 2-3 (Errors 3,

12: Plaintiff has PTSD, as noted in the medical records from Dr. Koltuska-Haskin).

However, there is substantial evidence to support the ALJ's findings that Plaintiff has

the moderate mental limitations detailed above.  The ALJ found that Plaintiff exhibits

some disorganization, memory problems, anxiety, irritability, lack of focus, and

difficulty managing stress, particularly after 2007, as detailed in the medical records

from Dr. Koltuska-Haskin as well as Plaintiff's self-reported symptoms.  AR at 75-76

(citing AR at 327-38).  However, the ALJ also found that Plaintiff's average IQ score,

"grossly intact cognitive functioning" (as evidenced by cognitive test scores), history of

"skilled substantial gainful activity level work," and ability to groom and dress herself

support the moderate mental limitations.  *Id.* (citing AR at 336).  Plaintiff makes no

argument regarding how the evidence to which she cites would support a change to

one or more of the ALJ's step three mental limitation severity findings.  In fact, the ALJ

clearly considered how Plaintiff's cognition and mood changed after 2007, and he

thoroughly evaluated the medical records from Dr. Koltuska-Haskin.  Based on the

ALJ's analysis, I recommend that the Court find no error at steps two or three.

**C.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity ("RFC")
is Based on Substantial Evidence**

The remainder of Plaintiff's arguments appear to relate to the ALJ's assessment

of Plaintiff's RFC.  At step four, the ALJ determines the claimant's RFC, which is "the

most [she] can still do despite [physical and mental] limitations," based on "all of the

relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(1), (3).  The ALJ's "RFC

assessment must include a narrative discussion describing how the evidence supports

each conclusion."  SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  However, the ALJ

does not need to complete a "formalistic factor-by-factor recitation of the evidence." *See*

*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff presents a variety of evidence that she argues the ALJ should have

considered more fully when he determined her RFC including evidence regarding why

she stopped taking medication or seeking treatment and evidence from various medical

providers about her mental and physical impairments.  As a preliminary matter, I note that Plaintiff failed to provide any argument for how her RFC may have been different if the ALJ considered the evidence that Plaintiff alleges he ignored.  As explained above, Plaintiff's RFC contained several mental and physical limitations which indicates that the ALJ agreed with Plaintiff that her medical impairments reduce her ability to work. AR at 77.  Plaintiff's conclusory statements that the ALJ failed to consider certain evidence are not sufficient to show that those pieces of evidence necessitated additional or stricter limitations in the RFC.

In addition, the ALJ clearly evaluated all of the evidence that Plaintiff identifies in her Motion when he formulated Plaintiff's RFC.  In her Motion, Plaintiff argues that the ALJ failed to consider: (1) Evidence related to Plaintiff's fear of doctors and allergies to gluten in medication (Errors 1-2 and 18-19); (2) Medical and symptom evidence about Plaintiff's neurological and cognitive function, including results from an EEG study (Errors 5, and 8-10); (3) Medical and symptom evidence about Plaintiff's mental health (Errors 6, 11, and 22); and (4) Medical and symptom evidence about Plaintiff's back pain (Errors 14-17).  *See generally doc. 33*.  Contrary to Plaintiff's contentions, the ALJ incorporated all of this evidence into his analysis when he formulated the RFC.  *See* AR at 78 ("[Plaintiff] did not get treatment . . . because she had given up on doctors. . . She has a hard time . . . trust[ing] doctors." Gluten "makes her sick."); AR at 79 (discussing

"normal" and "stable" neurological findings including normal results after Plaintiff's

formal EEG study); AR at 80-81 (discussing Plaintiff's history of cognitive issues as well

as mental health issues including depression, mood problems, hallucinations, anger

management, and PTSD); AR at 81 (discussing medical findings related to Plaintiff's

back pain and her breast reduction surgery to reduce the pain).

I am satisfied that the ALJ considered all of the evidence in Plaintiff's medical

record and symptom testimony and that the evidence on which the ALJ relied is not

"overwhelmed by other evidence in the record," including the evidence that Plaintiff

presents in her Motion.  *See Grogan*, 399 F.3d at 1261-62 (quoting *Musgrave*, 966 F.2d at

1374).  Because a court may not "reweigh the evidence or substitute [its] judgment for

that of the agency," *Bowman*, 511 F.3d at 1272, I recommend that the Court uphold the

ALJ's findings with respect to Plaintiff's RFC.

Lastly, Plaintiff argues in Errors 6 and 13 that the ALJ should have contacted Drs.

Koltuska-Haskin and Larivee for a function-by-function assessment before finding the

doctors' medical opinions partially persuasive and not persuasive, respectively.  *See doc.

33* at 2-3.  An ALJ "may recontact [a] medical source" if the medical evidence in the

record "is insufficient or inconsistent" and the ALJ is not able to make a finding based

on the evidence available to the ALJ in the record.  20 C.F.R. § 404.1520b(b).  Plaintiff

fails to argue why the overall medical evidence is insufficient or inconsistent such that

the ALJ was not able to make a proper determination of Plaintiff's RFC.  An ALJ's

finding that a particular medical opinion is somewhat or not persuasive is not an

indication that the ALJ is relying on an insufficient or inconsistent record.  Indeed, the

ALJ provided specific and evidence-based reasons for his findings with respect to Dr.

Koltuska-Haskin's and Dr. Larivee's opinions which persuades me that the ALJ had

sufficient evidence overall to analyze these medical opinions in the context of the entire

record and to make a determination of Plaintiff's RFC.  AR at 84 (stating that Dr.

Koltuska-Haskin's opinion about Plaintiff's mental limitations is persuasive "to the

extent that it appears to be consistent with simple work" based on other medical

evidence of Plaintiff's cognitive abilities in the record); AR at 83 (stating that Dr.

Larivee's opinion is not persuasive because it "did not provide clinical findings to

support limitations").

V.   **CONCLUSION**

   For the foregoing reasons, I recommend that the Court find no reversible error in

the ALJ's decision.  Therefore, I recommend that the Court deny Plaintiff's Motion to

Reverse and Remand (*doc. 33*) and affirm the judgment of the SSA.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of
a copy of these Proposed Findings and Recommended Disposition they may file written
objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party
must file any objections with the Clerk of the District Court within the fourteen-day
period if that party wants to have appellate review of the proposed findings and
recommended disposition.  If no objections are filed, no appellate review will be
allowed.**